**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TANVEER JOHAL, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, a public body | ) |
| corporate and politic under the laws of the | ) |
| State of Illinois, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

The Plaintiff, Tanveer Johal, M.D., by and through undersigned counsel, as her Complaint against the Defendant, Board of Trustees of the University of Illinois, a public body corporate and politic under the laws of the State of Illinois, states as follows:

### INTRODUCTION

1.     Plaintiff, Tanveer Johal, M.D. ("Dr. Johal") brings this civil action due to her suspension and termination from the Family Medicine Residency Program in Rockford, Illinois operated by the University of Illinois and its College of Medicine in violation of the Fourteenth Amendment of the United States Constitution due to the denial of due process and equal protection under 42 U.S.C. § 1983.

2.     In addition, Dr. Johal's action is brought to remedy discrimination on the basis of sex under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq*. ("Title VII") and the Civil Rights Act of 1991.

### PARTIES

1

3.      Defendant, Board of Trustees of the University of Illinois ("Defendant"), is a public body corporate and politic under the laws of the State of Illinois operating a Family Medicine Residency Program through its College of Medicine in Rockford, Illinois ("the Program").

4.      Dr. Johal is citizen of Canada and a physician granted a temporary medical permit in the State of Illinois. Dr. Johal was a resident in the Program from July 1, 2016 until May 24, 2019.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 as this case is a civil action that arises under 42 U.S.C. § 1983 for violations of Dr. Johal's due process rights by a state actor and under Title VII and the Civil Rights Act of 1991 to remedy discrimination on the basis of sex and national origin.

6.      This Court may also exercise supplemental jurisdiction under 28 U.S.C. § 1367 over Dr. Johal's breach of contract claim as it arises from the same case or controversy as the claim giving this Court original jurisdiction.

7.      Venue is appropriate under 28 U.S.C. § 1391 in that a substantial portion of the events giving rise to Dr. Johal's claims occurred within this district.

## FACTUAL ALLEGATIONS

8.      On March 26, 2018, Dr. Johal entered into a Resident Agreement with Defendant whereby she accepted appointment to the Program for her third year of post graduate training ("PGY-3"). The term of the Resident Agreement was from July 1, 2018 through June 30, 2019. A true and accurate copy of the Resident Agreement between Dr. Johal and Defendant is attached hereto as "**Exhibit A**".

9.      The Program is accredited by the Accreditation Council for Graduate Medical Education ("ACGME"). Family medicine residency programs accredited by ACGME require residents to complete three years of training (36 months in total), with 12 months spent in each of the three post-graduate training years.

10.      In order to be eligible for board certification by the American Board of Family Medicine ("ABFM"), a resident must complete the last two years of post-graduate training at the same ACGME accredited training program.

11.      Dr. Johal successfully completed her first year of post-graduate training ("PGY-1") at the Program between July 1, 2016 through June 30, 2017.

12.      Dr. Johal successfully completed her second year of post graduate training ("PGY-2") at the Program between July 1, 2017 and June 30, 2018.

13.      During PGY-2, Dr. Johal was placed on academic probation but successfully completed the probation before being promoted to PGY-3.

14.      Because she was expected to complete PGY-3 and graduate from the Program on June 30, 2019, Dr. Johal sat for and passed the Family Medicine Certification Examination administered by the American Board of Family Medicine in April 2019.

15.      On March 27, 2019, Dr. Johal registered for a continuing medical education course in Orlando, Florida scheduled between May 8 and May 13, 2019.

16.      Dr. Johal had previously requested, and the Program granted her, permission to take leave between May 8 and May 13, 2019 for continuing medical education.

17.      Due to problems in her domestic life that included physical and emotional abuse by her husband, Dr. Johal canceled her registration in the continuing medical education course in Orlando, Florida.

18.     Dr. Johal did, however, take leave from the Program between May 8 and May 13, 2019 to recover from psychological effects of domestic abuse, but did not inform the Program about her change in plans.

19.     On May 16, 2019, Dr. Joseph Ross, the Program Director asked to meet with Dr. Johal in his office.

20.     The Human Resources Director, Brett Ruiz, was also present.

21.     The door to Dr. Ross's office was shut while the meeting occurred. Dr. Ross was seated across from Dr. Johal at his desk and Mr. Ruiz was seated on a couch away from the desk.

22.     Dr. Ross and Mr. Ruiz, both males, asked Dr. Johal where she had traveled during her leave.

23.     Dr. Johal did not feel comfortable discussing her domestic issues with either Dr. Ross or Mr. Ruiz, so she incorrectly informed them that she had traveled to Orlando, Florida, but stated that she did not attend the continuing medical education course.

24.     Mr. Ruiz stated that the Department of Homeland Security (DHS) provides travel history documentation for foreign nationals. Mr. Ruiz asked Dr. Johal what the history would show if it were obtained. Dr. Johal stated that she could provide a paper I-94. However, Mr. Ruiz stated she could retrieve the history electronically through the DHS website right now.

25.     Mr. Ruiz left Dr. Ross's office for less than a minute to retrieve the copy of Dr. Johal's passport that the Program maintained on file in the residency office for her visa application, so that Dr. Johal could use it to access the DHS I-94 travel history website.

26.     The door to Dr. Ross's office was left open while Mr. Ruiz went to retrieve the passport information and remained open for the remainder of the meeting. Passers-by, including residents, nurses and other staff, could overhear the conversation.

27.     When he returned, Mr. Ruiz instructed Dr. Johal to use Dr. Ross's computer to go to the DHS website and enter her passport and biographical information on the DHS website. Mr. Ruiz then requested that Dr. Johal click on the electronic consent to access the I-94 travel history report. The travel history was retrieved, and Mr. Ruiz asked if she would print the report and provide the University with a copy.

28.     Dr. Johal felt she had no choice but to agree and print the report.

29.     Dr. Ross asked Dr. Johal to provide documentation substantiating her statements regarding her travel the following day and informed her that she should return to her scheduled lecture.

30.     In the morning on May 17, 2019, Dr. Johal confided in a senior female faculty member that she had been experiencing domestic violence and emotional abuse by her husband and that as a result, she had not been truthful with Dr. Ross and Mr. Ruiz about the fact that she changed her travel plans.

31.     The senior female faculty member informed Dr. Johal that she would handle the situation and speak with Dr. Ross personally about it. The senior female faculty member further instructed Dr. Johal not to give Dr. Ross the documentation he requested.

32.     In the late morning or early afternoon on May 17, 2019, the senior female faculty member spoke to Dr. Ross about her conversation with Dr. Johal. The senior female faculty member recommended to Dr. Ross that Dr. Johal be granted a leave of absence to seek assistance related to the domestic violence and emotional abuse. The senior female faculty member also recommended that Dr. Johal undergo a fitness for duty evaluation. The senior female faculty member further told Dr. Ross that she instructed Dr. Johal not to provide the documentation he requested.

33.     In the late afternoon on May 17, 2019, Dr. Ross and Mr. Ruiz called Dr. Johal in for another meeting. During this meeting, Dr. Ross summarily suspended Dr. Johal for failing to provide the documentation he requested about her leave from May 8, 2019 to May 13, 2019. Dr. Ross acknowledged speaking to the senior female faculty member prior to his meeting with Dr. Johal. Dr. Johal requested that Dr. Ross allow her to speak to him outside of the presence of Mr. Ruiz so that Dr. Johal could discuss the matter with him privately, but Dr. Ross denied her request.

34.     Dr. Johal was made to feel inferior on the basis of her sex when Dr. Ross denied her request to speak privately about the matter.

35.     This was not the first time that Dr. Ross had made Dr. Johal feel inferior on the basis of her sex. In or about March 2017, Dr. Johal brought to Dr. Ross' s attention the sexual discrimination and harassment she was facing by a senior male resident, who made comments regarding men's superiority to women and his right to choose and have multiple wives according to his religion. Dr. Ross did not act upon this information. The male resident did not face any consequences and Dr. Johal continued to be subject to the harassment.

36.     According to the Resident Agreement, a summary suspension may only be imposed if "in the best interest of patient or staff welfare." See **Exhibit A**, Section V, Subparagraph c.

37.     Dr. Ross did not allege that the suspension was in the best interest of patient or staff welfare.

38.     According to the Resident Agreement, a general suspension may be imposed if a resident has "failed to comply with the Resident Duties set forth in [the] Resident Agreement." See **Exhibit A**, Section V, Subparagraph c.

39.    A general suspension, as opposed to a summary suspension, entitles a resident to the appeal procedures set forth in Exhibit B of the Resident Agreement. See **Exhibit A**, Section V, Subparagraph c.

40.    Dr. Ross did not notify Dr. Johal of her right to appeal the suspension in accordance with Exhibit B of the Resident Agreement.

41.    Male residents who had engaged in unprofessional conduct such as failing to attend CME conferences, or who were charged with driving under the influence which required a fitness for duty evaluation, did not receive similar treatment or disciplinary action.

42.    Thereafter, during an in-person meeting with Dr. Ross and Mr. Ruiz on May 24, 2019, Dr. Johal was given written notice that she was being terminated from the Program effective immediately for alleged: (i) failure to comply with University and residency policies; (ii) failure to meet ACGME professionalism competency; and (iii) providing false information related to leave taken from May 8, 2019 to May 13, 2019.

43.    The notice did not inform Dr. Johal what University of residency policies she violated or how she failed to meet ACGME professionalism competency.

44.    The notice stated that Dr. Johal could request an appeal within 14 days in accordance with Exhibit B of her Resident Agreement.

45.    Immediately following her termination, Mr. Ruiz told Dr. Johal that because of her status as an H-1B worker she must immediately return to Canada and could not remain in the Program while she exercised any appeal rights afforded under her Resident Agreement.

46.    Dr. Ross also told Dr. Johal that because of her status as an H-1B worker, the Program would not offer her the opportunity to make up any unauthorized leave taken from May 8, 2019 to May 13, 2019.

47.     Dr. Johal timely requested an appeal in accordance with Exhibit B of her Resident Agreement to the Resident Appeals Committee.

48.     Dr. Johal's appeal hearing was scheduled for June 18, 2019.

49.     On June 3, 2019, Dr. Johal retained legal counsel who sent a letter to Dr. Ross concerning his failure to offer Dr. Johal an appeal related to the May 17, 2019 suspension in violation of the Resident Agreement, and the inadequacy of the termination notice. Dr. Johal's counsel requested a hearing on the suspension and identification of which University and residency policies she had violated.

50.     Neither the Program nor its counsel responded to the June 3, 2019 letter.

51.     Graduate Medical Education Policy 704 of the University of Illinois College of Medicine Rockford, which is applicable to the Program, states that a resident has the right to present such information or materials (oral or written) as they wish to support their case. A true and accurate copy of Graduate Medical Education Policy 704 is attached hereto as "**Exhibit C**".

52.     In preparation for her appeal, Dr. Johal requested a letter of support from the senior female faculty member in whom she confided about the domestic violence and emotional abuse had been experiencing.

53.     Although the senior female faculty member had previously voiced her support for Dr. Johal and was of the opinion that Dr. Johal had serious issues related to domestic violence and physical and psychological abuse that needed to be recognized by the Program, the senior female faculty member was instructed not to communicate further with Dr. Johal and that she could not write a letter of support for Dr. Johal's appeal.

54.     Also, in preparation for her appeal, Dr. Johal requested a letter of support from a co-resident in the Program whom she traveled with between May 8 and May 13, 2019. However, Program representatives stifled Dr. Johal's request for a letter of support from her co-resident.

55.     Dr. Ross and/or other representatives of the Program told residents that if they support Dr. Johal in her appeal, the University of Illinois would not provide legal representation if the matter resulted in litigation.

56.     On June 11, 2019, counsel for Dr. Johal sent a letter to Dr. Ross requesting that the Program immediately retract its statements to residents and inform them that they may choose to support Dr. Johal with no fear of retribution from the Program.

57.     Neither the Program nor its counsel responded to the June 11, 2019 letter.

58.     On June 18, 2019, the Resident Appeals Committee heard Dr. Johal's appeal. Dr. Johal explained in detail, during the appeal hearing, the personal circumstances that caused her to change her travel plans.

59.     For the first time during the hearing, Dr. Ross argued that Dr. Johal had a pattern of engaging in unprofessional behavior.

60.     Additionally, during the appeal hearing, Dr. Ross stated that if Dr. Johal had been an American citizen, the University would have been able to extend her contract for an additional four days to accommodate for the change from CME to personal leave, but since she was not, the Program would have to pay to extend her visa for the additional days needed for Dr. Johal to complete PGY-3.

61.     On June 26, 2019, the Resident Appeals Committee issued a decision sustaining Dr. Johal's termination. The Resident Appeals Committee failed to address or acknowledge the

information Dr. Johal provided concerning how her personal circumstances affected her decision-making.

62.     In support of its decision, the Resident Appeals Committee incorrectly stated that Dr. Johal's file contained statements from staff indicating that she engaged in a pattern of unprofessional behavior.

63.     On June 26, 2019, Dr. Johal requested an appeal to the Associate Dean of Academic Affairs.

64.     On July 8, 2019, the Associate Dean of Academic Affairs sustained the termination.

65.     On July 8, 2019, Dr. Johal appealed the decision of the Associate Dean of Academic Affairs to the Regional Dean of the College of Medicine.

66.     On July 17, 2019, the Regional Dean of the University of Illinois College of Medicine at Rockford sustained the decision of the Resident Appeals Committee and the Associate Dean of Academic Affairs.

67.     Dr. Johal has exhausted her appeal rights through the Program and the University.

68.     Dr. Johal filed a charge of discrimination against Defendant (Charge No. 440-2019-07213) with the Equal Employment Opportunity Commission ("EEOC") on or about September 6, 2019, complaining of acts of discrimination on the basis of sex, national origin and retaliation.

69.     On or about November 12, 2019, the EEOC issued to Dr. Johal a notice informing of her right to sue Defendant in federal court. A copy of the right to sue letter is attached hereto as **Exhibit B** and incorporated by reference herein.

**COUNT I**
**VIOLATION OF DUE PROCESS RIGHTS**
**REQUIRED UNDER SECTION 1983**
**(Declaratory, Injunctive and Monetary Relief)**

70.     Dr. Johal repeats and realleges the allegations set forth in Paragraphs 1 through 69 above as if fully set forth herein.

71.     Defendant, by and through its employees, acting under color or custom of state law in the course and scope of their employment, affirmatively acted to deprive Dr. Johal of her clearly established right to procedural due process under the Fourteenth Amendment of the United States Constitution through the following actions:

a.  Defendant failed to offer Dr. Johal a hearing on the May 17, 2019 suspension;

b.  Defendant failed to give Dr. Johal accurate written notice of the reasons for her termination from the Program; and

c.  GME Defendant interfered with Dr. Johal's appeal rights under the Resident Agreement and GME Policy 704 "to present all information or materials (oral or written) as they wish to support their case."

72.     WHEREFORE, Dr. Johal respectfully requests that the Court award her the following relief:

a.  A declaratory finding that Dr. Johal was entitled to appeal the May 17, 2019 suspension in accordance with the Resident Agreement and GME Policy;

b.  A declaratory finding that the Defendant, by and through its employees, interfered with Dr. Johal's appeal rights under the Resident Agreement and GME Policy;

c.  An injunction compelling and requiring Defendant to reinstate Dr. Johal into the Program from which she was wrongfully terminated and to take all actions necessary to affect her reinstatement;

    d.   An injunction prohibiting Defendant from in any way interfering with or precluding Dr. Johal from exercising any and all appeal rights pursuant to the Resident Agreement and GME Policy;

    e.   An award of compensatory damages from the Defendant in an amount to be determined at trial;

    f.   An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) in an amount to be determined at trial;

    g.   For prejudgment interest at the statutory rate; and

    h.   For such other and further relief as the Court deems just and proper under the circumstances.

**COUNT II**
**VIOLATION OF EQUAL PROTECTION**
**REQUIRED UNDER SECTION 1983**
**(Declaratory, Injunctive and Monetary Relief)**

73.    Dr. Johal repeats and realleges the allegations set forth in Paragraphs 1 through 69 above as if fully set forth herein.

74.    Defendant, by and through its employees, acting under color or custom of state law in the course and scope of their employment, affirmatively acted to deprive Dr. Johal equal protection under the Fourteenth Amendment of the United States Constitution through the following actions:

    a.   Defendant acted with ill-will, animus, or spite towards Dr. Johal, thereby interfering with her procedural rights under the Resident Agreement and GME Policy;

    b.   Defendant treated Dr. Johal differently than residents who are United States citizens; and

12

c. Defendant failed to apply the standards and policies affecting Dr. Johal as a resident in a uniform and equitable manner.

75. WHEREFORE, Dr. Johal respectfully requests that the Court award her the following relief:

a. A declaratory finding that Dr. Johal was entitled to appeal the May 17, 2019 suspension in accordance with the Resident Agreement and GME Policy;

b. A declaratory finding that the Defendant, by and through its employees, interfered with Dr. Johal's appeal rights under the Resident Agreement and GME Policy;

c. An injunction compelling and requiring Defendant to reinstate Dr. Johal into the Program from which she was wrongfully terminated and to take all actions necessary to affect her reinstatement;

d. An injunction prohibiting Defendant from in any way interfering with or precluding Dr. Johal from exercising any and all appeal rights pursuant to the Resident Agreement and GME Policy;

e. An award of compensatory damages from the Defendant in an amount to be determined at trial;

f. An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) in an amount to be determined at trial;

g. For prejudgment interest at the statutory rate; and

h. For such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III
## BREACH OF CONTRACT
### (Declaratory, Injunctive and Monetary Relief)

76.     Dr. Johal repeats and realleges the allegations set forth in Paragraphs 1 through 69 above as if fully set forth herein.

77.     Defendant, by and through its employees, breached its Resident Agreement with Dr. Johal through the following actions:

   a.   Defendant summarily suspended Dr. Johal without contractual basis on May 17, 2019;

   b.   Defendant failed to offer Dr. Johal a hearing on the May 17, 2019 suspension;

   c.   Defendant failed to give Dr. Johal accurate written notice of the reasons for her termination from the Program;

   d.   Defendant interfered with Dr. Johal's appeal rights under the Resident Agreement and GME Policy 704 "to present all information or materials (oral or written) as they wish to support their case"; and

   e.   Defendant failed to apply the standards and policies affecting Dr. Johal as a resident in a uniform and equitable manner.

78.     WHEREFORE, Dr. Johal respectfully requests that the Court award her the following relief:

   a.   A declaratory finding that Dr. Johal was entitled to appeal the May 17, 2019 suspension in accordance with the Resident Agreement and GME Policy;

   b.   A declaratory finding that the Defendant, by and through its employees, interfered with Dr. Johal's appeal rights under the Resident Agreement and GME Policy;

14

c.  An injunction compelling and requiring Defendant to reinstate Dr. Johal into the Program from which she was wrongfully terminated and to take all actions necessary to affect her reinstatement;

d.  An injunction prohibiting Defendant from in any way interfering with or precluding Dr. Johal from exercising any and all appeal rights pursuant to the Resident Agreement and GME Policy;

e.  For such other and further relief as the Court deems just and proper under the circumstances.

**COUNT IV**
**SEX DISCRIMINATION**
**(Declaratory, Injunctive and Monetary Relief)**

79.  Dr. Johal repeats and realleges the allegations set forth in Paragraphs 1 through 69 above as if fully set forth herein.

80.  During the course of Dr. Johal's employment, and particularly after she reported to and sought support from a senior female faculty member about her being a victim of domestic violence, Defendant, by and through its agents and employees, discriminated against Dr. Johal through the following actions:

a.  Heightened scrutiny of her professional judgment and her actions as compared to similarly situated male counterparts;

b.  Dr. Johal was held to different terms and conditions of employment as compared to her similarly situated male counterparts; and

c.  Dr. Johal was subject to action and conduct by male agents and employees of Defendant that made her feel as if she were inferior.

81.     The discrimination described herein created an intimidating, hostile and offensive work environment perpetrated by Defendant's agents and employees, which interfered with Dr. Johal's emotional and psychological well-being and caused her to face disciplinary action that resulted in her termination from the Program and her inability to acquire board certification with the American Board of Family Medicine.

82.     Defendant failed to adequately supervise or control or otherwise penalize the conduct, acts and failures of its employees and agents as described above.

83.     WHEREFORE, Dr. Johal respectfully requests that the Court award her the following relief:

    a.   An injunction prohibiting Defendant from subjecting Dr. Johal to further unlawful discrimination or harassment;

    b.   Compensatory damages in an amount to which she is entitled for injuries attributable to Defendant's conduct;

    c.   Attorney's fees and costs incurred in bringing and prosecuting this action;

    d.   Punitive damages;

    e.   For such other and further relief as the Court deems just and proper under the circumstances.

Dated: February 10, 2020

Respectfully Submitted;
TANVEER JOHAL, M.D.


By: ___/s/ Jenna E. Milaeger_____
        Attorney for Plaintiff

16

Jenna E. Milaeger
Michael K. Goldberg
Priyanka U. Desai
GOLDBERG LAW GROUP, LLC
120 S. Riverside Plaza, Suite 1675
Chicago, Illinois 60606
P: 312-930-5600
F: 312-930-0944
E-Mail: jmilaeger@goldberglawoffice.com
E-Mail: mgoldberg@goldberglawoffice.com