**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| Tanveer Johal, M.D., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 20 CV 50200 |
| v. | ) | |
| | ) | Magistrate Judge Lisa A. Jensen |
| Board of Trustees of the University | ) | |
| of Illinois, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

For the following reasons, Defendant Board of Trustees of the University of Illinois' motion to dismiss count III [31] is denied, and Defendants Joseph Ross, M.D. and Brett Ruiz's motion to dismiss counts I and II [38] is granted in part and denied in part. Plaintiff's individual capacity claims in counts I and II are dismissed with prejudice. Plaintiff's official capacity due process claim in count I is dismissed without prejudice. Plaintiff may proceed on her official capacity equal protection claim in count II and her sex discrimination claim in count III. Any motion for leave to file a second amended complaint shall be filed by January 11, 2021.

### I. Background

Plaintiff Tanveer Johal, M.D. brought this action against Defendants Board of Trustees of the University of Illinois ("Board"), Joseph Ross, M.D. ("Dr. Ross"), and Brett Ruiz ("Mr. Ruiz") following her suspension and termination in May 2019 from the Family Medicine Residency Program ("the Program") operated by the University of Illinois and its College of Medicine ("University") in Rockford, Illinois. In her amended complaint, Plaintiff alleges that Dr. Ross, the Program Director, and Mr. Ruiz, the Program's Human Resources Manager, denied her procedural due process under the Fourteenth Amendment (count I), Dr. Ross and Mr. Ruiz denied her equal protection under the Fourteenth Amendment on the basis of her status as a non-citizen visa holder (count II), and the Board discriminated against her based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991 (count III).

The following factual allegations are taken from Plaintiff's amended complaint, Dkt. 28, and are accepted as true for the purposes of the motion to dismiss. *See O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018). Plaintiff, a citizen of Canada and an H-1B visa holder, was a resident in the Program for her first, second, and third year of post-graduate training, namely from July 1, 2016 through May 24, 2019. During Plaintiff's second year in the Program, she was placed on academic probation, which she successfully completed.

1

On March 26, 2018, Plaintiff entered into a Resident Agreement with the Board for her third and final year of post-graduate training, expecting to graduate from the Program on June 30, 2019. The Resident Agreement required Plaintiff to: comply with all educational and clinical requirements set forth by the Program and specified by the Accreditation Council for Graduate Medical Education ("ACGME"); use her "best effort, judgment, and diligence in a professional manner in performing all duties, tasks, and responsibilities;" and conform with all University policies and procedures. Amended Complaint, Ex. A, Dkt. 28. The Resident Agreement provided that Plaintiff's failure to comply with these requirements could lead to corrective action, including but not limited to termination from the Program. The Resident Agreement provided that the University could terminate or suspend the agreement "at any time for any reason." *Id.*

The Resident Agreement further provided that the University has the right to summarily suspend a resident "if he/she believes such suspension is in the best interest of patient or staff welfare." *Id.* at 5. Within ten days of a summary suspension, the resident must either be reinstated or provided notification of either a general suspension or termination. Only a general suspension or termination may be appealed; a summary suspension may not.

On March 27, 2019, Plaintiff registered for a continuing medical education ("CME") course in Orlando, Florida between May 8 and May 13, 2019. The Program granted Plaintiff permission to take leave for the CME course. Plaintiff subsequently cancelled her registration for the CME course. Plaintiff did, however, take leave between May 8 and May 13, 2019 to recover from psychological effects of domestic abuse by her husband. Plaintiff did not inform the Program about her change in plans.

On May 16, 2019, Dr. Ross asked Plaintiff to meet in his office, where Mr. Ruiz was also present. During the meeting, Dr. Ross and Mr. Ruiz, both males, asked Plaintiff where she traveled during her leave. Plaintiff incorrectly informed them that she traveled to Orlando, Florida but did not attend the CME course. Mr. Ruiz asked Plaintiff, a foreign national, what her Department of Homeland Security I-94 travel history would show. Plaintiff stated she could provide a paper I-94. Instead, Mr. Ruiz retrieved a copy of Plaintiff's passport so Plaintiff could use it to access her travel history online. Mr. Ruiz instructed Plaintiff to access her I-94 travel history report using Dr. Ross' computer. Plaintiff felt she had no choice but to agree and print the report. At the end of the meeting, Dr. Ross asked Plaintiff to provide documentation substantiating her statements regarding her travel the following day.

On May 17, 2019, Plaintiff confided in a senior female faculty member that she had been experiencing domestic violence and emotional abuse by her husband and that as a result, she provided false information to Dr. Ross and Mr. Ruiz about leave she took the week before. This faculty member informed Plaintiff that she would handle the situation and speak with Dr. Ross personally about it. The faculty member further instructed Plaintiff not to give Dr. Ross the documentation he requested.

When the senior female faculty member spoke with Dr. Ross later that day, she recommended that Plaintiff be granted a leave of absence to seek assistance related to domestic violence and emotional abuse. The faculty member also recommended that Plaintiff undergo a

fitness for duty evaluation and told Dr. Ross that she instructed Plaintiff not to provide the documentation he requested.

In the late afternoon on the same day, Dr. Ross and Mr. Ruiz called Plaintiff into another meeting. Dr. Ross summarily suspended Plaintiff for failing to provide the documentation he requested about her leave. Dr. Ross acknowledged speaking with the senior female faculty member prior to the meeting. Plaintiff requested to speak with Dr. Ross outside the presence of Mr. Ruiz so that she could discuss the matter with him privately. Dr. Ross denied her request. Plaintiff stated this was not the first time Dr. Ross made her feel inferior on the basis of her sex. In March 2017, Plaintiff informed Dr. Ross of sexual discrimination and harassment she was facing by a senior male resident, who made comments regarding men's superiority to women, including his right to have multiple wives. Dr. Ross did not act upon this information. The male resident did not face any consequences, and Plaintiff continued to be subject to the harassment.

During a meeting with Dr. Ross and Mr. Ruiz on May 24, 2019, Plaintiff was terminated from the Program for failing to comply with University and residency policies, failing to meet ACGME professional competency, and providing false information related to her leave. Mr. Ruiz told Plaintiff that because of her status as an H-1B worker, she must immediately return to Canada. Dr. Ross further stated that because of Plaintiff's visa status, the Program would not offer her the opportunity to make up any unauthorized leave taken from May 8 to May 13, 2019.

Plaintiff was granted a post-termination hearing, which was held on June 18, 2019. During the appeal hearing, Dr. Ross stated that if Plaintiff has been an American citizen, the University would have extended her contract to allow her to make up the unauthorized leave, but that because of her visa status the Program would have to pay to extend her visa for the additional days needed for Plaintiff to complete her third year of the Program. Plaintiff's termination was upheld by the Resident Appeals Committee. Plaintiff appealed the decision to the Associate Dean of Academic affairs and then to the Regional Dean of the College of Medicine. Plaintiff's termination was affirmed at each level of appeal.

Before the Court are Defendants' motions to dismiss Plaintiff's amended complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 31.[1]

## II. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 26(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In determining the sufficiency of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *White v. Keely*, 814 F.3d 883, 887-88 (7th Cir. 2016).

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 45.

above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Pierce v. Zoetis, Inc.*, 818 F.3d 274, 280 (7th Cir. 2016) (stating that a plaintiff's "complaint must contain enough fact to raise a reasonable expectation that discovery will reveal evidence to support her claim.") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) (internal quotation marks omitted).

## III. Discussion

### A. Due Process (Count I)

In count I, Plaintiff alleges that Dr. Ross and Mr. Ruiz "acted to deprive [her] of her clearly established right to procedural due process" by: (1) failing to provide Plaintiff with a hearing on her suspension; (2) providing incomplete notice of the reasons for her termination; and (3) interfering with her appeal rights. Plaintiff's Amended Complaint at ¶ 77, Dkt. 28. To state a procedural due process claim, Plaintiff must allege that she: (1) was deprived of a constitutionally protected property or liberty interest; and (2) was not provided whatever process of law was due for such a deprivation. *See Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d 342, 347 (7th Cir. 2017).

Plaintiff alleges a property interest in her continued education through her Resident Agreement with the University. As Dr. Ross and Mr. Ruiz's argue, Plaintiff does not have a protected property interest in continued graduate education because she did not have a "for cause" termination provision in her Residency Agreement. *See Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 601 (7th Cir. 2009) ("A graduate student does not have a federal constitutional right to a continued graduate education."); *Fenje v. Feld*, 301 F. Supp. 2d 781, 798-99 (N.D. Ill. 2003) (finding a property interest based upon termination for cause provision in medical residency agreement), aff'd, 398 F.3d 620 (7th Cir. 2005). Instead, the Residency Agreement provided that Plaintiff could be suspended or terminated "at any time for any reason." Amended Complaint, Ex. A, Dkt. 28. Plaintiff does not respond to this argument and instead argues that she had a property interest in her continued participation in the Program because the Resident Agreement provided certain procedures upon suspension or termination. However, the Seventh Circuit has "rejected similar claims of an interest in contractually-guaranteed university process many times." *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 773-74 (7th Cir. 2013) ("Like other student-plaintiffs before him, all that Charleston alleges is that the medical school conferred on him certain procedural rights. It may have been unfair for the university not to follow its own procedures in Charleston's case, but it was not unconstitutional."). Accordingly, Plaintiff has not alleged a protectable property interest.

Plaintiff also alleges she has a protected liberty interest in her professional reputation. To prove such an occupational liberty interest, however, Plaintiff must show: (1) she was stigmatized by the defendant's conduct; (2) the stigmatizing information was publicly disclosed; and (3) she suffered a tangible loss of other employment opportunities as a result of public disclosures. *See*

*Johnson v. Martin*, 943 F.2d 15, 16 (7th Cir. 1991). Dr. Ross and Mr. Ruiz argue that Plaintiff's has failed to sufficiently allege all three of these elements.

As to the first element, Plaintiff alleges she was stigmatized by her improper termination from the Program, namely for unprofessional conduct. Dr. Ross and Mr. Ruiz argue that this element requires Plaintiff to show that Defendants made defamatory statements about her, namely that her termination was based on false charges. Defendants' Reply at 6, Dkt. 48 (citing *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998)). Although Plaintiff alleges that her termination for unprofessional conduct was improper and she was unable to clear her name, she fails to allege that the alleged reasons for her termination were false.

Even assuming the reasons for Plaintiff's termination were sufficiently stigmatizing, she does not allege that Dr. Ross and Mr. Ruiz publicly disclosed the stigmatizing information to anyone, let alone to other residency programs. "The public-disclosure element requires that the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010). Plaintiff's reliance on *Doe v. Purdue Univ.*, 928 F.3d 652, 661 (7th Cir. 2019) is inapposite because that case specifically found that self-publication cannot form the basis of this type of liberty interest claim. *See id.* at 662.

As to the third element, Dr. Ross and Mr. Ruiz argue that Plaintiff has not sufficiently alleged a loss of other employment opportunities because she merely alleges that she would be delayed, not entirely foreclosed, in her pursuit of her occupation of choice by having to start over as a second-year resident at another training program. But what Plaintiff alleges in her complaint is that due to Defendants' actions, she "is unable to obtain admission to any other ACGME-accredited family medicine residency training program." Plaintiff's Amended Complaint at ¶ 74, Dkt. 28. Nevertheless, Plaintiff's claim must fail because she has not sufficiently alleged all the elements of a protectable liberty interest. Without a protectible property or liberty interest, this Court need not evaluate the process that she was due.

Plaintiff's substantive due process claim also fails. Despite Plaintiff's argument in her response relating to substantive due process, she has not put forth any allegations in her amended complaint to support such a claim. Instead, Plaintiff focused count I on a deprivation of her right to "procedural due process." Amended Complaint at ¶ 77, Dkt. 28. Regardless, Plaintiff has not set forth a fundamental right or liberty interest that is protected by the Due Process Clause to support a violation of substantive due process. *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F. 3d 828, 832 (7th Cir. 2012) (dismissing dental student's substantive due process claim because "[c]onspicuously missing on this list [of fundamental rights and liberty interests that are protected by the Due Process Clause] is the right to follow any particular career."). Plaintiff's only theory for alleging a substantive due process claim is that Defendants' conduct in interfering with her appeal rights "shocks the conscience." Plaintiff's Response at 9, Dkt. 47. However, Plaintiff does not cite to any cases that support a finding that interfering with Plaintiff's appeal rights is the type of conduct that shocks the conscience. Therefore, Plaintiff has not sufficiently alleged a substantive due process claim.

For these reasons, Plaintiff's due process claim against Dr. Ross and Mr. Ruiz in their official capacities in count I is dismissed. The Court, however, exercises its discretion to dismiss the claim without prejudice, as opposed to with prejudice as Defendants request. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 518 (7th Cir. 2015) (emphasizing a presumption in favor of giving leave to amend a complaint that is dismissed). However, the Court is mindful of the fact that Plaintiff has already amended her complaint once in response to the Board's motion to dismiss. Accordingly, if Plaintiff wishes to file a second amended complaint, and can do so consistent with Federal Rule of Civil Procedure 11, she must file a motion for leave and explain how any amendment would cure the deficiencies outlined here. *See Levan Galleries LLC v. City of Chicago*, 790 F. App'x 834, 835-36 (7th Cir. 2020) ("A court should freely give leave to amend when justice so requires, Fed. R. Civ. P. 15(a)(2), yet it has broad discretion to decide whether to allow amendment and may refuse in cases of undue delay, bad faith or dilatory motives, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice or futility.") (internal quotation marks and citation omitted). Any motion for leave to file a second amended complaint shall be filed by January 11, 2021.

### B. Equal Protection (Count II)

In count II, Plaintiff alleges that Dr. Ross and Mr. Ruiz deprived her of her right to equal protection by: (1) acting with "ill-will, animus, or spite" towards her, thereby interfering with her procedural rights under the Resident Agreement and University Policy; (2) treating her differently than residents who are United States citizens; and (3) failing to apply the standards and policies in a uniform and equitable manner.

"The Equal Protection Clause of the Fourteenth Amendment prohibits intentional and arbitrary discrimination." *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 696 (7th Cir. 2015). Here, Plaintiff is alleging Defendants discriminated against her "as a nonimmigrant alien on an H1-B visa." Plaintiff's Response at 14, Dkt. 47. "For an equal-protection claim based on class membership to survive a motion to dismiss, a plaintiff must sufficiently allege that they were treated differently by the government based on membership in a protected class, and that the defendant acted with discriminatory intent." *Doe v. Bd. of Educ. of City of Chicago*, No. 19 C 00263, 2020 WL 1445638, at *6 (N.D. Ill. Mar. 24, 2020).

Here, Plaintiff alleges that Dr. Ross and Mr. Ruiz intentionally discriminated against her because of her citizenship status based on the following statements they made: (1) falsely telling Plaintiff she needed to immediately return to Canada following her termination;[2] (2) the Program would not offer her the opportunity to make up any unauthorized leave because of her visa status; and (3) that if Plaintiff had been a United States citizen, the University would have extended her contract to allow her to make up the unauthorized leave. Dr. Ross and Mr. Ruiz do not dispute that Plaintiff, as a non-United States citizen, is a member of a protected class. They argue that Plaintiff has not plead that they treated her differently than similarly situated United States citizens. However, at the pleading stage, a plaintiff need not identify specific comparators in her complaint.

---

[2] Although Plaintiff does not allege that this statement was false in her amended complaint, she does so in response to the motion to dismiss. Accordingly, this Court may consider this allegation along with the allegations laid out in the amended complaint. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("[A] plaintiff may supplement the complaint with factual narration in an affidavit or brief.").

*See Glenwood Halsted LLC v. Vill. of Glenwood*, 866 F. Supp. 2d 942, 947 (N.D. Ill. 2012) (denying defendants' motion to dismiss equal protection claim because "a plaintiff need not identify specific comparators in the complaint") (citing *Geinosky v. City of Chi.*, 675 F.3d 743, 748 n.3 (7th Cir. 2012)). Defendants cite to several cases to argue that Plaintiff's must identify similarly situated comparators. However, those cases were dismissed at the pleading stage because the plaintiffs were either not similarly situated to the identified comparators or the complaints were devoid of any allegations that would allow a plausible inference of discriminatory intent. *See, e.g., LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) (dismissing equal protection claim where plaintiff conceded there was a "key difference" between plaintiff and the alleged comparator); *Britt v. Anderson*, 21 F. Supp. 3d 966, 973 (N.D. Ill. 2014) ("She does not name any similarly situated men whose cell phone photos were not searched and seized, nor does she offer any other evidence that would allow a plausible inference of discriminatory effect."); *Jucha v. City of N. Chicago*, 63 F. Supp. 3d 820, 831 (N.D. Ill. 2014) (dismissing equal protection claim where complaint made clear that comparator was not similarly situated).

Here, Plaintiff has alleged several statements made by Dr. Ross and Mr. Ruiz that support an inference of discriminatory intent. Nevertheless, Dr. Ross and Mr. Ruiz argue that these statements cannot support Plaintiff's equal protection claim because they "were based upon what they were required to do under the law." Defendants' Memo at 13, Dkt. 39. However, Defendants make no attempt to cite the law to which they refer or otherwise cite to case law to support that this is a valid reason to dismiss Plaintiff's claim at the pleading stage. In her response, Plaintiff alleges that Mr. Ruiz's statement that she must immediately return to Canada was false because her termination was not final until it was upheld on appeal and 8 C.F.R. § 214.1(l)(2) allows an H1-B visa holder a 60-day grace period after termination before being required to leave the country. Plaintiff's Response at 14, Dkt. 47. Defendants do not respond to Plaintiff's allegation that the statement was false.

Instead, they argue that even accepting Plaintiff's allegations as true, Plaintiff was not terminated for failing to make up her unauthorized leave. It is true that Plaintiff was told she was terminated for providing false information, failing to meet professional competency, and failing to comply with University policies. But Plaintiff is alleging that because of her citizenship status, the University policies were not applied fairly to her, which resulted in her improper termination. Moreover, Defendants make no attempt to address Plaintiff's allegation that Defendants admitted they would have allowed her to make up the unauthorized leave if she were a United States citizen. While Plaintiff must show much more to ultimately succeed on this claim, at the pleading stage, Plaintiff has sufficiently alleged that Dr. Ross and Mr. Ruiz's actions were motivated by her status as a non-citizen. *See Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997) ("A complaint may not be dismissed unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations."). Accordingly, she may proceed on her equal protection claim.

Lastly, Dr. Ross and Mr. Ruiz argue that because Plaintiff has not stated an equal protection claim, and even if she had that constitutional right was not clearly established, the claim against them in their individual capacities is barred by the doctrine of qualified immunity. *See Sonnleitner v. York*, 304 F.3d 704, 716 (7th Cir. 2002). Defendants make this same argument in relation to Plaintiff's individual capacity claim against them in count I. In response, Plaintiff agrees with Defendants that the doctrine of qualified immunity only precludes monetary damages and

retrospective relief. Plaintiff's Response at 15, Dkt. 47. Plaintiff then confirms that she is only seeking prospective relief against both Defendants in counts I and II. This is consistent with Plaintiff's amended complaint where despite naming Defendants in their individual and official capacities, Plaintiff is only seeking prospective relief. Amended Complaint, Dkt. 28. In light of Plaintiff's assertion that she is no longer proceeding on her individual capacity claims in counts I and II, those claims are dismissed with prejudice. Therefore, the doctrine of qualified immunity does not attach.

### C. Sex Discrimination (Count III)

In count III, Plaintiff alleges that the Board discriminated against her by: (1) subjecting her to heightened scrutiny of her professional judgment and her actions as compared to similarly situated male counterparts; (2) holding her to different terms and conditions of employment compared to similarly situated male counterparts; and (3) subjecting her to action and conduct by male agents and employees that made her feel inferior. Plaintiff further alleges that this discrimination created an intimidating, hostile and offensive work environment. Accordingly, Plaintiff appears to set forth a sex discrimination claim for disparate treatment and hostile work environment.

### 1. Disparate Treatment

"[I]n order to prevent dismissal under Rule 12(b)(6), a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). "Plaintiff need not include allegations that would establish 'a prima facie case of discrimination' under the relevant methods of proof; indeed, because employers 'are familiar with discrimination claims,' little information 'is required to put the employer on notice of these claims' and satisfy the federal pleading standards." *McGinnis v. United States Cold Storage*, 2018 WL 2320930, at *5 (N.D. Ill. May 22, 2018) (quoting *Carlson v. CSX Transp.*, 758 F.3d 819, 827 (7th Cir. 2014)).

The Board first argues that Plaintiff has failed to plead that she suffered an adverse employment action. The Board claims that "Plaintiff does not state her Title VII claim on the basis of her termination. Rather, Plaintiff pleads that, although the *cause* of her termination was her own falsehoods, she engaged in these falsehoods because she had purportedly been subject to discrimination and a hostile work environment." Defendant's Memo at 6, Dkt. 32 (emphasis in original). However, the Board is reading Plaintiff's allegations too narrowly at the pleading stage. It is the Board's actions after Plaintiff misstated her travel plans and identified herself as a victim of domestic abuse that she alleges were discriminatory and ultimately caused her to face a suspension and termination from the Program.

Next, the Board argues that Plaintiff has not sufficiently alleged that she was terminated because of her sex. The Board asserts that Plaintiff has pleaded herself out of court by admitting a non-discriminatory reason for her suspension and termination, namely her false statements about her leave. However, to "succeed in a Title VII discrimination action, an employee need not show

8

that her sex was the *exclusive* reason for her employer's actions. She must prove only that sex was a *motivating* factor." *Tamayo*, 526 F.3d at 1086 (emphasis in original).

Lastly, the Board's argument that Plaintiff fails to allege she was treated differently than similarly situated male residents that lied to the Program is also without merit. "The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination[.]." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (citation omitted). Instead, Plaintiff must "include allegations in her complaint that plausibly suggest that her termination was based on her [ ] sex." *Parker v. Illinois Human Rights Comm'n*, No. 12 C 8275, 2013 WL 5799125, at *4 (N.D. Ill. Oct. 25, 2013). Plaintiff has alleged that male residents that failed to attend CME conference or who were charged with driving under the influence and needed to complete a fitness for duty examination, which a senior faculty member recommended Plaintiff also complete, did not receive similar treatment or disciplinary action. At the pleading stage, these allegations plausibly suggest that Plaintiff suffered an adverse employment action because of her sex.

## 2. Hostile Work Environment

To state a claim for hostile work environment, Plaintiff must plausibly show: "(1) the work environment [was] subjectively and objectively offensive; (2) her gender ... [was] the cause of the harassment; (3) the conduct [was] severe or pervasive; and (4) there [is] a basis for employer liability." *Stone v. Bd. of Trustees of N. Illinois Univ.*, 38 F. Supp. 3d 935, 945 (N.D. Ill. 2014). "In determining whether a workplace is objectively hostile, we consider the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo v. Bliss*, 864 F.3d 541, 549-50 (7th Cir. 2017) (internal quotation marks and citation omitted).

The Board argues that Plaintiff's allegation that Dr. Ross made her feel inferior because of her sex on two separate occasions in March 2017 and on May 17, 2019 are two isolated incidents that are neither objectively offensive nor severe or pervasive. Defendant's Memo at 9, Dkt. 32. However, the March 2017 incident involved Plaintiff's report to Dr. Ross of sexual discrimination and harassment by a senior male resident who made comments regarding men's superiority to women, including his right to have multiple wives. Dr. Ross did not act upon Plaintiff's reports of discrimination and harassment and it continued throughout Plaintiff's employment. Amended Complaint at ¶ 36, Dkt. 28. Viewing the amended complaint in the light most favorable to Plaintiff, it does not allege two discrete incidents but an ongoing course of alleged sexual harassment that included both a coworker's repeated comments and Dr. Ross' refusal to speak privately with Plaintiff about her domestic abuse claims. "[C]ourts in this district have tended to deny motions to dismiss where plaintiffs alleged some ongoing or repeat instances of harassment." *James v. Lydon*, 19 C 3366, 2020 WL 3192286, at * 5 (N.D. Ill. June 15, 2020). Additionally, at this stage the Court may consider Plaintiff's report of discriminatory and harassing conduct in 2017, even though it is outside the charging period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice. . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered

by a court for the purposes of determining liability.") (internal quotation mark and citation omitted).

Finally, regarding Defendant's claim that the incidents plead are not objectively offensive, as Plaintiff points out, the pleading standard for a hostile work environment claim is different from the evidentiary burden she must subsequently meet. *See Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511). The court in *Huri* stated "it is premature at the pleadings stage to conclude just how abusive Huri's work environment was…. It may be that Huri, once discovery has run its course, cannot produce evidence to survive summary judgment. But that question can safely be postponed to another day. Defendants have fair notice of Huri's claims and the grounds upon which those claims rest, and the details in her Second Amended Complaint present a stor+y that holds together." *Id.* (internal quotation and citation omitted). Here too, Defendant has fair notice of Plaintiff's claim. Accordingly, Plaintiff has sufficiently pled a claim of hostile work environment.

## IV. Conclusion

For the reasons stated above, Plaintiff may proceed on her equal protection and sex discrimination claims. Accordingly, the Board's motion to dismiss [31] is denied, and Dr. Ross and Mr. Ruiz's motion to dismiss [38] is granted in part and denied in part.


Date: December 21, 2020                    By:    _____
                                                  Lisa A. Jensen
                                                  United States Magistrate Judge

10